IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JEREMY C. SOUTHGATE d/b/a SOUND SPARK STUDIOS,<br><br>*Plaintiff,*<br><br>- v. -<br><br>UNITED STATES OF AMERICA; BARACK H. OBAMA; ALLISON D. BURROUGHS; MASSACHUSETTS INSTITUTE OF TECHNOLOGY; ALPHABET INC., *a/k/a* "GOOGLE"; LYOR COHEN; WARNER MUSIC GROUP CORP.; TIME WARNER INC.; THEORY ENTERTAINMENT, LLC; IAC/ INTERACTIVECORP; INTERACTIV CORPORATION; ACADEMY OF MOTION PICTURE ARTS AND SCIENCES; NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC.; INTERNATIONAL BUSINESS MACHINES CORPORATION; SPOTIFY AB; STARBUCKS CORPORATION; BILL, HILLARY & CHELSEA CLINTON FOUNDATION; SOUNDSPARK, INC.; DOES 1 - 10,000,<br><br>*Defendants.* | Civil Action No. 1:17cv1047-LO/MSN<br><br>**JURY TRIAL DEMANDED**<br><br>THIS COMPLAINT MUST BE VIEWED IN COLOR |

**FILED SEP 18 2017 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA**

## ORIGINAL COMPLAINT

I, Plaintiff JEREMY C. SOUTHGATE *doing business as* SOUND SPARK STUDIOS, *PRO SE*, hereby commence this Civil Action against all Defendants for deprivation of rights in violation of the Fifth Amendment of the *Constitution of the United States*, false representations in interstate Commerce, conspiracy

1

in restraint of interstate Commerce, and a pattern of unlawful racketeering activity. In support this Civil Action, I allege this Complaint:

## INTRODUCTION

1. *United States Constitution* Article VI, Clause 2:

> **This Constitution**, and the Laws of the United States which shall be made in Pursuance thereof ... **shall be the supreme Law of the Land**....

2. *Marbury v. Madison,* 5 U. S. 137, 180 (1803) famously held what should remain good law:

> ... in declaring what shall be the supreme law of the land, the constitution itself is first mentioned; and not the laws of the United States generally, but those only which shall be made in pursuance of the constitution, have that rank.
>
> Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void; and that **courts, as well as other departments, are bound by that instrument.**

3. Plaintiff JEREMY C. SOUTHGATE brings this Civil Action in law and equity because the *Constitution of the United States* is not being properly upheld as the "supreme Law of the Land" with respect to Plaintiff's property rights as secured by the Fifth Amendment of the *Constitution*:

> No person shall ... be deprived of life, liberty, or property, without due process of law....

4. The Judgment [ECF No. 80] and proceedings, in the United States District Court for the District of Massachusetts, in *Southgate v. SoundSpark, Inc., et al,* 1:2014-cv-13861-ADB (hereafter, "*SoundSpark Litigation I*"), were arbitrary and capricious, devoid of due process, and purported to deprive the

Plaintiff of property under color of law.[1] Because of the absence of "due process," the Judgment purporting to dismiss Plaintiff's property claims should be held unconstitutional and set aside under *Fed. Rule Civ. P.* 60(d)(1 & 3).

5. In exercising appropriate Article III "Federal Question" original jurisdiction in this case, Plaintiff respectfully petitions that this Court should grant all appropriate relief — up to and including judgment that the "judicial Power of the United States" (*U. S. Const.* Article III, Section 1) exceeded its Constitutionally limited jurisdiction in the case of *SoundSpark Litigation I* <u>and also</u> in the cases of *Obergefell v. Hodges*, 576 U.S. ___ (2015) and *United States v. Windsor*, 570 U.S. ___ (2013), for the reasons set forth herein.

6. Defendant UNITED STATES OF AMERICA, without the "due process" of the People's exclusive Amdt. X power to grant consent, has deprived the People of the United States, including the Plaintiff JEREMY C. SOUTHGATE, of Constitutional direct or democratic-representative control over *trademark property rights* (*e.g.* the word MARRIAGE™ and other trademarks).

7. All Defendants have deprived Plaintiff JEREMY C. SOUTHGATE of the exclusive rights to a *Sound Spark Studios Mark-Artwork* music enterprise identity secured to him by the United States Constitution, by the Power of a democratically representative Congress:

---

[1] http://www.**nutter**.com/ip-law-bulletin/**court-silences-sound-spark-studios-trademark-claims** D. Mass. Judge ALLISON D. BURROUGHS was a partner at Nutter McClennen & Fish LLP ("nutter") until December 2014 when she became a federal judge and was immediately assigned to the *SoundSpark* case, violating 28 U. S. C. § 455(a) because MASSACHUSETTS INSTITUTE OF TECHNOLOGY (MIT) is (a) Nutter's client and (b) an investor/advisor privy of the Defendants ANA VILLANUEVA and CHRISTOPHER NOLTE (MIT students) and SOUNDSPARK, INC.

Article I, Section 1 —
"***All* legislative Powers** herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Emphasis added.

Article I, Section 8, Clause 3 —
"**The Congress shall have Power ... To regulate Commerce**[2] with foreign Nations, and **among the several States**, and with the Indian Tribes"

Article I, Section 8, Clause 8 —
"**The Congress shall have Power** ... To promote the Progress of Science and useful Arts, by **securing for limited Times to Authors and Inventors** the exclusive Right to their respective Writings and Discoveries"

## JURISDICTION

8. This District Court has subject-matter jurisdiction pursuant to:

i. **15 U. S. C. § 4 (Monopolies and Combinations in Restraint of Trade)** — "The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of sections 1 to 7 of this title...;" and,

ii. **15 U. S. C. § 1121(a) (Trademarks)** — "The district and territorial courts of the United States shall have original jurisdiction ... of all actions arising under this chapter...;" and,

iii. **18 U. S. C. § 1964(a) (Racketeer Influenced Corrupt Organizations)** — "The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter...;" and,

iv. **28 U. S. C. § 1331 (Federal Question)** — "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"; and,

v. **28 U. S. C. § 1367 (Supplemental Jurisdiction)** — "... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

---

[2] webstersdictionary1828.com/Dictionary/**commerce** — "Familiar intercourse between the sexes." *See also:* www.merriam-webster.com/dictionary/**commerce** — "sexual intercourse"

4

## STATUTES OF LIMITATIONS

9. The earliest possible event that would lead to the discovery of a cause of action was an email notice sent to the Plaintiff on August 7, 2014.

10. This Civil Action is commenced within the applicable four-year statute of limitations for the Sherman Act, 15 U. S. C. § 1 *et seq.*, as set forth by 15 U. S. C. § 15b.

11. This Civil Action is commenced within the applicable four-year statute of limitations for the Racketeer Influenced Corrupt Organizations Act, 18 U. S. C. § 1961 *et seq.*, as set forth by *Rotella v. Wood*, 528 U. S. 549 (2000).

12. This Civil Action is commenced within the applicable five-year statute of limitations for Lanham Act and other property claims in the State of Virginia, *Va. Code* § 8.01-243, in accordance with the precedent of *Lamparello v. Falwell*, 360 F. Supp. 2d 768 (E.D. Va. 2004) (reversed on other grounds):

> Under Virginia law the statute of limitations for injuries to property is five years. *See* Va. Stat. Ann. § 8.01-243 (2004). Because trademark rights have the characteristics of property it would appear that infringement claims brought pursuant to the Lanham Act constitute injuries to property and the five year statute of limitations applies.

13. This Civil Action is commenced within the three-year statute of limitations for the Copyright Act pursuant to 17 U. S. C. § 507(b).

## VENUE

14. This venue is proper because the claims substantially arise from events occurring with respect to Plaintiff's federal property registrations situated at an agency of the United States Government, the United States Patent and Trademark Office ("USPTO"), at Alexandria, Virginia.

15. As a matter of law, this venue is proper for all Defendants, *inter alia,* since property is situated and Defendants are found at the USPTO:

   i. **15 U. S. C. § 15(a) (Monopolies and Combinations in Restraint of Trade)** — "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent…;" and,

   ii. **18 U. S. C. § 1965(a) (Racketeer Influenced Corrupt Organizations)** — "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs"; and,

   iii. **28 U. S. C. § 1391(b)(2) (Venue in General)** — "A civil action may be brought in — a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated…."

16. With respect to the United States, venue is proper pursuant to:

**28 U. S. C. § 1391(e)(1)(A & B)** — "A civil action in which a defendant is … the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated…."

17. With respect to any present and/or future parties, **15 U. S. C. § 5** and **18 U. S. C. § 1965(b)** permit the summoning of any party, wherever he or she may be found, as "the ends of justice require."

## PARTIES

18. Plaintiff JEREMY C. SOUTHGATE is a Citizen of the United States currently residing in the State of Massachusetts. Plaintiff does business at the United States Patent and Trademark Office at Alexandria, Virginia, and in interstate Commerce generally as "SOUND SPARK STUDIOS."

19. Defendant UNITED STATES OF AMERICA is the Federal Government of these United States.

20. Defendant BARACK H. OBAMA is an individual who was the 44th *President of the United States*; he resides at 2446 Belmont Road NW, Washington, D. C., 20008.

21. Defendant ALLISON D. BURROUGHS is an individual who is currently a *United States District Judge* for the District of Massachusetts; she resides at 70 Moffat Rd., Waban, MA, 02468.

22. Defendant MASSACHUSETTS INSTITUTE OF TECHNOLOGY (a/k/a "MIT") is a university (school) with a principal place of business at 77 Massachusetts Ave, Cambridge, MA, 02139.

23. Defendant ALPHABET INC., *a/k/a* "GOOGLE," is a Delaware corporation registered at 2711 Centerville Rd., Suite 400, Wilmington, DE, 19808.

24. Defendant LYOR COHEN is an individual who was formerly the Chief Executive Officer of WARNER MUSIC GROUP CORP.; he presently remains a principal investor in THEORY ENTERTAINMENT, LLC, which has business relationships with WARNER MUSIC GROUP CORP.; he is currently employed by GOOGLE; he resides at 92 Jane St., New York, NY, 10014.

25. Defendant WARNER MUSIC GROUP CORP. is a Delaware corporation registered at 1209 Orange St., Wilmington, DE, 19801.

26. Defendant TIME WARNER INC., is a Delaware corporation registered at 1209 Orange St., Wilmington, DE, 19801.

27. Defendant THEORY ENTERTAINMENT, LLC, is a Delaware limited liability company registered at 2711 Centerville Rd., Suite 400, Wilmington, DE, 19808

28. Defendant IAC/INTERACTIVECORP is a Delaware corporation registered at 1209 Orange St., Wilmington, DE, 19801.

29. Defendant INTERACTIV CORPORATION is a California corporation registered at 97 S. 2nd St., Suite 100, No. 270, San Jose, CA, 95113

30. Defendant ACADEMY OF MOTION PICTURE ARTS AND SCIENCES is a California corporation registered at 8949 Wilshire Blvd., Beverly Hills, CA, 90211.

31. Defendant NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC., is a Delaware corporation registered at 1209 Orange St., Wilmington, DE, 19801.

32. Defendant INTERNATIONAL BUSINESS MACHINES CORPORATION (a/k/a "IBM" Corporation) is New York corporation with a principal place of business at New Orchard Rd., Armonk, NY, 10504.

33. Defendant SPOTIFY AB ("Spotify") is a limited company (ltd.) in the country of Sweeden, registered at Birger Jarlsgatan 61 SE-113 56 Stockholm, Sweeden, doing business in U. S. interstate and foreign commerce. SPOTIFY AB's has a subsidiary and domestic agent SPOTIFY USA INC. — a Delaware corporation registered at 160 Greentree Dr., Suite 101, Dover, DE, 19904.

34. Defendant STARBUCKS CORPORATION is a Washington corporation registered at 300 Deschutes Way SW, Suite 304, Tumwater, WA, 98501.

35. Defendant BILL, HILLARY & CHELSEA CLINTON FOUNDATION is an Arkansas corporation registered at 1200 President Clinton Ave., Little Rock, AR, 72201.

36. Defendant SOUNDSPARK, INC., is a Delaware corporation registered at 251 Little Falls Dr., Wilmington, DE, 19808.

37. DOE Defendants are unknown tortfeasors and/or conspirators.

## SOVEREIGN IMMUNITY WAIVED BY THE UNITED STATES

38. **15 U. S. C. § 1122(a).** The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, shall not be immune from suit in Federal or State court by any person, including any governmental or nongovernmental entity, for any violation under this chapter.

39. Pursuant to 15 U. S. C. § 1122(a), the UNITED STATES OF AMERICA does not have sovereign immunity for any violation under 15 U. S. C. § 1051 *et seq.*

40. Pursuant to 15 U. S. C. § 1122(a), BARACK H. OBAMA does not have sovereign (executive) immunity, as 44th *President of the United States of America,* for any violation under 15 U. S. C. § 1051 *et seq.*

41. Pursuant to 15 U. S. C. § 1122(a), ALLISON D. BURROUGHS does not have sovereign (judicial) immunity, as a D. Mass. *United States District Judge,* for any violation under 15 U. S. C. § 1051 *et seq.*

## FEDERAL REGISTRATIONS OF PROPERTY OF
## JEREMY C. SOUTHGATE D/B/A SOUND SPARK STUDIOS

42. Plaintiff JEREMY C. SOUTHGATE is the sole proprietor of United States Trademark Registration No. 4,606,004.

43. Plaintiff JEREMY C. SOUTHGATE is the sole proprietor of United States Service Mark Registration No. 4,711,931.

44. Plaintiff JEREMY C. SOUTHGATE is the sole proprietor of United States Service Mark Registration No. 5,047,726.

45. Plaintiff JEREMY C. SOUTHGATE is the sole proprietor of United States Copyright Registration No. VA 1,938,870.

46. Plaintiff JEREMY C. SOUTHGATE is the sole proprietor of United States Copyright Registration No. VA 2,026,048.

47. Plaintiff JEREMY C. SOUTHGATE is the sole proprietor of United States Copyright Registration No. VA 2,030,585.

48. Plaintiff JEREMY C. SOUTHGATE is the sole proprietor of United States Copyright Registration No. SR 741,166.

49. The forgoing Federal Registrations (¶¶ 42 - 48) are collectively referred-to as the "intellectual property" of Plaintiff JEREMY C. SOUTHGATE doing business as SOUND SPARK STUDIOS.

## EXCLUSIVE RIGHTS OF
## JEREMY C. SOUTHGATE D/B/A SOUND SPARK STUDIOS

50. Via U. S. Trade and Service-mark Registrations Nos. 4,606,004 and 4,711,931, Plaintiff JEREMY C. SOUTHGATE owns a mark comprising:

The color(s) red, blue and gold is/are claimed as a feature of the mark. The mark consists of a gold encircled eight-point star, two red ellipses, and "Sound Spark Studios" in blue.

51. Via U. S. Service-mark Registration No. 5,047,726, Plaintiff JEREMY C. SOUTHGATE owns a mark comprising:

The color(s) gold, red, and blue is/are claimed as a feature of the mark. The mark consists of a gold eight-point star outline encircled by a gold ring; two red ellipse outlines emanating from the star; three triangularly spread words "SOUND", "SPARK", and "STUDIOS" in blue - all concentrically arranged. White indicates transparency.

52. With respect to the above registrations in ¶¶ 42 - 44 and mark descriptions ¶¶ 50 - 51, 15 U. S. C. § 1057(c) grants to Plaintiff JEREMY C. SOUTHGATE d/b/a SOUND SPARK STUDIOS:

... exclusive right to use the registered mark[s] in commerce on or in connection with the goods or services specified in the certificate....

53. With respect to the above work-registrations in ¶¶ 45 - 48, 17 U. S. C. § 106 grants to Plaintiff JEREMY C. SOUTHGATE d/b/a SOUND SPARK STUDIOS, *inter alia,* "exclusive rights to do and to authorize any of the following:"

**(1)** to reproduce the copyrighted work in copies or phonorecords;

**(2)** to prepare derivative works based upon the copyrighted work; ...

**(5)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly

54. The foregoing is not an exhaustive list of Plaintiff JEREMY C. SOUTHGATE's rights, all of which shall continue to be reserved.

## STATEMENT OF THE CASE

### Jeremy C. Southgate's Authorship of the
### *Sound Spark Studios Mark-Artwork* & First Use In Commerce



55. On November 22, 2011, Plaintiff JEREMY C. SOUTHGATE, age 20, alone authored the following logo artwork and immediately began using the same as a trademark in interstate Commerce via the website "soundsparkstudios.com"[3] in connection with the services of "provision of information relating to music" (hereinafter referred-to as the "*Sound Spark Studios Mark-Artwork.*"):



---

[3] https://www.godaddy.com/whois/results.aspx?domain=soundsparkstudios.com
"Creation Date: 2011-11-22T10:00:55Z"

### "Say Chance"

56. On February 4, 2012, Plaintiff JEREMY C. SOUTHGATE (of Massachusetts) attended a concert by the musical group "Augustana," at the "9:30 Club" (815 V Street NW, Washington, D. C. 20001), in Washington, D. C., at which event a start-up musical group by the name of "SAY CHANCE" also performed:[4]



57. Consistent with Plaintiff's intention to be a "Musician & Entrepreneur" as a profession, Plaintiff JEREMY C. SOUTHGATE met and interacted with the members of SAY CHANCE and gave to them the following business card:



---

[4] http://washingtondc.eventful.com/events/augustana-w-graffiti-6-say-chance-/E0-001-043548952-5

58. The website "www.jeremysouthgate.com" shown on the above business card advertised Plaintiff's own musical sound recordings and contact information for Plaintiff's services — the website was principally an invitation for collaboration.

59. On March 20, 2012, SAY CHANCE (of Maryland) visited Boston, Massachusetts, and performed at the "Red Room at Cafe 939" (939 Boylston St., Boston, MA, 02215), which Plaintiff JEREMY C. SOUTHGATE attended.[5] Again, Plaintiff JEREMY C. SOUTHGATE met and interacted with the members of SAY CHANCE; and again, Plaintiff gave to them the same business card as before, seeking to collaborate.

60. At the March meeting, KELLY ROSENTHAL, one of the members of SAY CHANCE, confirmed verbally to the Plaintiff that she visited the website "jeremysouthgate.com" in the interim between the February and March 2012 meetings and listened to Plaintiff JEREMY C. SOUTHGATE's music as provided therein.

61. Because SAY CHANCE and KELLY ROSENTHAL visited Massachusetts in March 2012, they were subject to Massachusetts law. *Massachusetts General Laws, Chapter 108A, Section 12* provides:

> Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner operate as notice to or knowledge of the partnership....[6]

---

[5] https://www.last.fm/event/3143182+Eisley+at+Cafe+939+on+20+March+2012

[6] Analogous to *Va. Code § 50-73.80.*

Accordingly, notice to and knowledge of SAY CHANCE's KELLY ROSENTHAL with respect to Plaintiff JEREMY C. SOUTHGATE's musical enterprises, is imputed as notice to and/or knowledge of the SAY CHANCE partnership — is imputed to SAY CHANCE and KELLY ROSENTHAL's manager PETE GIBERGA[7] as a member of the SAY CHANCE partnership.

62. Consistent with PETE GIBERGA's (a) habit and (b) duty as manager to SAY CHANCE for artist development, performance bookings, and additional band-forming *talent-seeking*, PETE GIBERGA's reasonable search as a result of the knowledge obtained from Plaintiff JEREMY C. SOUTHGATE's business card would inevitably result in his first-hand knowledge of the *Sound Spark Studios Mark and Artwork*. *e.g.* from the website soundcloud.com/soundsparkstudios and placement of the *Sound Spark Studios Mark-Artwork* on both soundsparkstudios.com and jeremysouthgate.com:



---

[7] https://www.facebook.com/pg/SayChanceMusic/about/
"General Manager Pete Giberga: pete@camanagement.com"

https://patch.com/maryland/towson/youtube-launches-towson-teens-music-career
"Asked what about Say Chance stood out from the thousands of want-to-be **musicians he comes across in his line of work**, Giberga responded readily: "Their musicianship, their playing and singing ability. **It's easy to spot.**"

**Application for Federal Trademark Registration
& Ensuing Infringement Scheme**

63. From November 2011 through December 2013, Plaintiff JEREMY C. SOUTHGATE worked as "Barista" for STARBUCKS CORPORATION, and used his personal income to build a music recording studio in anticipation of recording a "debut album," to begin developing a portfolio of intellectual property — to be constitutionally secured to him by federal registrations.

64. On June 26, 2012, Plaintiff JEREMY C. SOUTHGATE, age 21, paid $275 to file an application (Serial 85664771) at the United States Patent and Trademark Office, at Alexandria, Virginia, for registration of the *Sound Spark Studios Mark-Artwork* as a trademark for "musical sound recordings."

65. Pursuant to 15 U. S. C. § 1057(c), Plaintiff JEREMY C. SOUTHGATE's eventual (September 16, 2014) registration of the *Sound Spark Studios Mark-Artwork* would entitle Plaintiff JEREMY C. SOUTHGATE to "a right of priority, nationwide in effect:"

> Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration....

66. On September 25, 2012, <u>within three months after</u> JEREMY C. SOUTHGATE filed for registration of the *Sound Spark Studios Mark-Artwork*, then-unbeknownst to the Plaintiff, LYOR COHEN "abruptly" resigned from his employment as Chief Executive Officer of WARNER MUSIC GROUP CORP.[8]

---

[8] http://www.rollingstone.com/music/news/music-industry-reacts-to-abrupt-resignation-of-warner-music-ceo-lyor-cohen-20120925

67. LYOR COHEN's abrupt "exit" from WARNER MUSIC GROUP CORP. was a break from habit, indicating an strong, urgent motive:

> "I didn't have any inkling that this was going to happen," says Tim Smith, manager of Skrillex, the electronic dance music superstar who has a joint-venture deal with Warner-owned Atlantic Records. "They just had their international meeting, and he oversaw it with their entire team in Berlin. It's odd to do that and the next week be gone."[9]

68. In September 2012, LYOR COHEN was secretive about his motive for his WARNER MUSIC GROUP CORP. "exit":

> "[Lyor Cohen:] I can't yet announce what I'll be doing next; I can only say that it will be something where I can work my entrepreneurial muscles and partner with artists." Cohen, who also worked with the Black Keys, Bruno Mars and Cee Lo Green during his eight-year tenure at Warner Music, is so private about his new business venture that the insider says he only refers to his new company by a "nonsensical" code name in emails and phone calls. (Our source declined to crack Cohen's code for us.)[10]

69. In January 2013, LYOR COHEN formed THEORY ENTERTAINMENT, LLC, in Delaware, and became its CEO.

70. In April 2013, THEORY ENTERTAINMENT, LLC, filed five applications (Serial Nos. 85913108, 85913136, 85913099, 85913117, 85913128) at the United States Patent and Trademark Office in Alexandria, Virginia, for the following mark:

# 300 ENTERTAINMENT

71. In September 2013, THEORY ENTERTAINMENT, LLC, filed five applications (Serial Nos. 86077989, 86077951, 86077980, 86077961,

---

[9] *Id.*

[10] http://www.nydailynews.com/entertainment/gossip/confidential/lyor-cohen-leaves-warner-music-group-new-track-firm-article-1.1169129

86077972) at the United States Patent and Trademark Office in Alexandria, Virginia, for the following "triangle" mark:



72. In October 2013, LYOR COHEN, Chief Executive Officer and investor of THEORY ENTERTAINMENT, LLC, publicly launched a new music enterprise under the name "300 ENTERTAINMENT" and using the above "triangle mark"[11] on the website "300entertainment.biz"

73. The website "300entertainment.biz" advertised that PETE GIBERGA (¶¶ 61, 62) was a partner of 300 ENTERTAINMENT:

 

---

[11] http://www.billboard.com/biz/articles/news/record-labels/5778094/lyor-cohen-unveils-300-new-content-company-with-atlantic

18

Accordingly, the notice to and/or knowledge, of PETE GIBERGA, resulting from Plaintiff JEREMY C. SOUTHGATE's providing information relating to his music enterprise to SAY CHANCE, was the imputed notice to and/or knowledge of LYOR COHEN's 300 ENTERTAINMENT via PETE GIBERGA's partnerships with with both SAY CHANCE and 300 ENTERTAINMENT.

74. In October 2013, LYOR COHEN's THEORY ENTERTAINMENT, LLC, a/k/a "300 ENTERTAINMENT" received an initial investment of $15 Million, $5 Million of which from GOOGLE (now ALPHABET, INC.).[12] [13]

75. On November 21, 2013, LYOR COHEN (of New York) visited the MASSACHUSETTS INSTITUTE OF TECHNOLOGY ("MIT") (of Massachusetts).[14]

76. LYOR COHEN's purpose in visiting MIT was "looking for a new way to source and promote artists."[15]

77. Two MIT graduate students "intercepted" LYOR COHEN and pitched an "idea" for "a new way to source and promote artists."[16]

---

[12] *Id.*

[13] https://www.sec.gov/Archives/edgar/data/1589878/000158987813000001/xslFormDX01/primary_doc.xml

[14] http://odge.mit.edu/tag/lyor-cohen/
"Lyor Cohen will be introducing 300, his new Google-backed record label at the cross section of media and technology. He will be giving a talk at MIT on Thursday, November 21st, 2013 at 4:30pm in Stata Center...."

[15] https://arts.mit.edu/mixing-art-entrepreneurship-soundspark-wins-10k-prize/
"... former CEO of Warner Music Group, visited MIT. Intercepting Cohen en route to a brainstorming session in the Stata Center, Nolte and Villanueva delivered their brief elevator pitch. They impressed the mogul enough that he invited them to pitch the idea at his New York office. "He was looking for a new way to source and promote artists," Nolte explains."

[16] *Id.*